UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA F., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. ED CV 19-511-SP <br><br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On March 21, 2019, plaintiff Anna F. filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law Judge ("ALJ") erred at step five by failing to explain an inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 7-12; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-3.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did err at step five, but the error was harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 38 years old on the alleged disability onset date, has a twelfth grade education. AR at 76, 129. She has past relevant work as a housecleaner. *Id.* at 56.

On May 1, 2017, plaintiff filed an application for a period of disability and DIB alleging an onset date of December 14, 2013 due to fibromyalgia, right leg nerve damage, chronic pain in the right leg, anxiety disorder, acid reflux, and idiopathic pulmonary fibrosis. *Id.* at 129-30. The Commissioner denied plaintiff's applications initially, and upon reconsideration, after which she filed a request for a hearing.[1] *Id.* at 167-82.

On September 11, 2018, plaintiff, represented by counsel, appeared and testified before ALJ Derek Johnson. *Id.* at 36-62. The ALJ also heard testimony from Raymond North, a vocational expert ("VE"). *Id.* On September 20, 2018, the ALJ denied plaintiff's claim for benefits. *Id.* at 16-30.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity from December 14, 2013, the alleged onset date, through December 31, 2017, the date

---

[1] This was plaintiff's second DIB application. Plaintiff's prior applications for DIB and supplemental security income were also denied, with ALJ Alan Markiewicz finding on December 13, 2013 that plaintiff as not disabled from October 15, 2006 through December 13, 2013. AR at 115-24.

last insured. *Id.* at 19.

At step two, the ALJ found plaintiff suffered from the following severe impairments: fibromyalgia; a history of right tibia and fibula fracture injury; obstructive pulmonary condition; unspecified cognitive disorder; affective disorders variously diagnosed as depressive and mood disorders; anxiety; and post-traumatic stress disorder. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined she had the capacity to perform sedentary work, but with the limitations that plaintiff could: occasionally push and pull with the right lower extremity; never crawl or climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and tolerate no exposure to temperature extremes, wetness, vibration, pulmonary irritants, or hazards such as unprotected heights and moving machinery. *Id.* at 21. The ALJ further determined plaintiff's mental limitations allowed her to: understand, remember, and carry out simple, routine tasks; and tolerate occasional interaction with the general public and coworkers. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work. *Id.* at 28.

At step five, the ALJ found there were jobs that existed in significant

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

numbers in the national economy that plaintiff could perform, including document preparer, touchup screener, and addresser. *Id.* at 28-29. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 30.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-11, 238-40. The decision of the ALJ stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

Plaintiff contends the ALJ erred at step five because he improperly relied on the testimony of the vocational expert, who identified jobs that exceeded plaintiff's RFC.  P. Mem. at 7-12.  Specifically, plaintiff argues the ALJ erred by failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC.  20 C.F.R. § 416.912(b)(3).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (stating the DOT is a source of reliable job information).  The DOT is the rebuttable presumptive authority on job classifications.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor.  *Massachi*, 486

F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p). But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, plaintiff's determined RFC limited her, inter alia, to simple, routine tasks. AR at 21. The VE identified three jobs someone with plaintiff's RFC could perform: document preparer, touchup screener, and addresser. *Id.* at 57-58. The ALJ asked the VE whether any of the jobs he identified had a reasoning level of three. *Id.* at 58. The VE responded that the document preparer job was a reasoning level three job. *Id*. The ALJ then inquired whether this job was consistent with the RFC for simple and routine tasks. *Id*. The VE responded that they were consistent because "[i]t's unskilled work" and "[t]he reasoning level three is equated in my view at a level that is at the elementary school level," an explanation that the ALJ accepted. *Id.* The ALJ thus fulfilled his initial obligation to inquire into whether the VE's testimony conflicted with the DOT, but was then required to obtain "a reasonable explanation for the apparent conflict." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p)). The question is whether the ALJ obtained such an explanation from the VE or erred in relying on the VE's testimony in reconciling the conflict.

**A.     The ALJ Erred at Step Five**

Plaintiff argues the ALJ erred at step five when he concluded that plaintiff could perform the job of document preparer. P. Mem. at 7-12. Specifically,

6

plaintiff argues the job, which requires a reasoning level of three, is incompatible with plaintiff's RFC restricting her to simple, routine tasks, and the ALJ erred by relying on the VE's testimony explaining the inconsistency. *Id.*

Each DOT job description includes general educational development ("GED") scales for reasoning, language, and mathematics, which are "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C, Section III. To determine a job's simplicity and the reasoning level required, one should look to the GED reasoning level ratings for the job listed in the DOT. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Id.*

The DOT classifies the job of document preparer as having reasoning level three. DOT 249.587-018. Level three reasoning assumes a person can "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT, App. C. The Ninth Circuit has held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015).

The VE here testified that someone with plaintiff's RFC could perform the job of document preparer because the job was "unskilled work" and "equated in [the VE's] view at a level that is at the elementary school level. AR at 58. The ALJ accepted the VE's testimony and did not ask for any further explanation. *Id.* In the hearing decision, the ALJ acknowledged that the document preparer job has a GED reasoning level of three, but explained the inconsistency by stating that the job was "consistent with simple repetitive tasks based on [the] VE's experience and knowledge." *Id.* at 29.

As defendant argues, *Zavalin* does not resolve the dispute here. *See* D. Mem. at 1-2. In *Zavalin*, the ALJ failed to identify any conflict between the VE's testimony and the DOT, and thus failed to resolve the inconsistency. 778 F.3d at 846-48. Here, as defendant notes, the ALJ inquired into the conflict and solicited an explanation from the VE. D. Mem. at 2. But this merely shifts the inquiry to whether the ALJ correctly relied on the VE's experience and knowledge in reconciling the conflict.

There is limited caselaw about what constitutes "a reasonable explanation for the apparent conflict." *Overman*, 546 F.3d at 463 (quoting SSR 00-4p)); *see Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (noting that to avoid unnecessary appeals, "an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC"). SSR 00-4p provides two examples of a reasonable explanation that would justify deviating from the DOT: (1) when evidence from a VE includes information not listed in the DOT; and (2) when a VE is able to provide more specific information about a job or occupation than the DOT. *See also Massachi*, 640 F.3d 1153, n.17 (examples of reasonable explanations from deviating from the DOT include that "the Dictionary does not provide information about all occupations, information about a particular job not listed in the Dictionary may be available elsewhere, and the general descriptions in the Dictionary may not apply to specific situations.").

Here, the VE's explanation relied on two grounds – that the document preparer job was "unskilled work" and "[t]he reasoning level three is equated in [the VE's] view at a level that is at the elementary school level." AR at 58. But neither of these resolves the conflict between plaintiff's limitation to simple, routine tasks, and the reasoning level required of the document preparer job.

First, the VE explains the document preparer job is unskilled; however, a job's skill level and reasoning level are distinct categories. *See Meissl*, 403 F.

Supp. 2d at 983 ("A job's [Specific Vocational Preparation ("SVP")] is focused on 'the amount of lapsed time' it takes for a typical worker to learn the job's duties. . . A job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves."). The DOT classifies the job of document preparer as having an SVP rating of two, which corresponds to "unskilled" work. DOT 249.587-018; SSR 00-4p ("[U]nskilled work corresponds to an SVP of 1-2."). But the DOT also classifies the document preparer job as having reasoning level three. DOT 249.587-018. Accordingly, the fact that the document preparer job is "unskilled" does not resolve the apparent conflict.

Second, the VE stated he views reasoning level three as elementary school level, but this explains nothing. There is no strict correlation between reasoning level and education. *See Zavalin*, 778 F.3d at 847 ("Contrary to the Commissioner's claim, the DOT specifically defines GED reasoning levels to include 'informal' as well as 'formal' education that is required for 'satisfactory job performance'. . . Thus, there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed."). More to the point, however the VE views reasoning level three does not address whether a job requiring reasoning level three can be performed by someone limited to simple, routine tasks. The VE offered no testimony that, for example, based on his experience, the particular job of document preparer involves no more than simple, routine tasks. Thus, the apparent conflict recognized by the Ninth Circuit in *Zavalin* was left unresolved here.

The ALJ consequently erred in relying on the VE's testimony that plaintiff could work as a document preparer. Neither of the reasons provided by the VE explain how plaintiff would be able to perform a job with a reasoning level apparently inconsistent with her RFC. And apart from citing the VE's experience and knowledge, the ALJ provided no additional reasoning in his hearing decision.

9

*See* AR at 29.  Accordingly, neither the hearing decision nor the VE's testimony at the hearing provide a reasonable explanation that would justify deviating from the DOT.

**B.     The ALJ's Error Was Harmless**

Defendant argues the error, if any, was harmless because plaintiff's argument relates only to the job of document preparer.  *See* D. Mem. at 2-3.  The court agrees.

The VE identified two additional jobs requiring only reasoning level two that plaintiff could perform – touchup screener, which has 13,000 positions in the national economy, and addresser, which has 8,100 positions in the national economy.  AR at 58.  Accordingly, there are more than 21,000 jobs that plaintiff could still perform in the national economy even if plaintiff's limitation to simple, routine tasks precludes the job of document preparer.  Plaintiff argues 21,100 jobs in the national economy is not a significant number of jobs, and reversal and remand are required so that the ALJ can complete the five-step sequential evaluation process.  P. Mem. at 11-12.

There is no "bright-line" rule in the Ninth Circuit for determining what constitutes a "significant number" of jobs.  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014).  Courts have found it "instructive" to compare cases in this inquiry.  *See Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  The Ninth Circuit has held that 1,000 to 1,500 positions regionally is a significant number of jobs (*see Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989)), and 25,000 positions nationally is a significant number of jobs.  *See Gutierrez*, 740 F.3d at 529.  If either the number of regional jobs or the number of national jobs is found to be significant, the court must uphold the ALJ's decision.  42 U.S.C. § 423(d)(2)(A); *Beltran*, 700 F.3d at 389-90.

Whether 21,100 jobs in the national economy is "significant" is not entirely settled, yet the relevant caselaw indicates it is. The parties cite various cases in which courts have attempted to determine what constitutes a sufficient number of jobs regionally or nationally. *See, e.g., Burtenshaw v. Berryhill*, 2018 WL 550590, at *2 (C.D. Cal. Jan. 23, 2018) (6,500 jobs in the national economy not a significant number); *Valencia v. Astrue*, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013) (14,082 national jobs and 114 regional jobs not significant); *Evans v. Colvin*, 2014 WL 3845046, at *1 (C.D. Cal. Aug. 4, 2014), *aff'd*, 672 Fed. Appx. 771 (9th Cir. 2017) (6,200 national jobs and 600 regional jobs significant); *Hoffman v. Astrue*, 2010 WL 1138340, at *15 (W.D. Wash. Feb. 8, 2010) (9,000 national jobs and 150 regional jobs significant).

As plaintiff notes, the Ninth Circuit held in *Gutierrez* that 25,000 national jobs was significant, but that the question was a "close call." 740 F.3d at 529. Yet the difference between 21,100 jobs and 25,000 jobs does not seem material such that it would shift the close call the other way. Further, the Ninth Circuit recently affirmed a decision in which 6,200 national jobs and 600 regional jobs was a significant number of jobs. *See Evans*, 2014 WL 3845046, at *1. The Eighth Circuit has also held that 10,000 national jobs is significant. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). On balance, the court finds the existence of 21,100 jobs in the national economy does not fall into the category of isolated jobs existing in very limited numbers. *See* 20 C.F.R. § 416.966(b) ("Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy.").

In sum, although the ALJ erred in accepting the VE's testimony about one job that plaintiff could perform, there is substantial evidence to support the ALJ's

11

finding that plaintiff could perform other jobs in significant numbers in the national economy.  Consequently, the ALJ's error at step five was harmless.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED:  November 30, 2020

SHERI PYM
United States Magistrate Judge